## UDALL *against* THE TRUSTEES OF BROOKLYN.

IN ERROR, on *certiorari,* to a Justice's Court. The trustees of the village of *Brooklyn,* in the county of *Kings,* brought an action of debt against *Udall,* the plaintiff in error, to recover the penalty of twenty-five dollars, for the breach of an ordinance of the village of *B.* in exercising the office of a *measurer of grain,* for hire, &c. without being licensed by the trustees of the village. By the act of *April* 12, 1816, (sess. 39. ch. 95.) the freeholders and inhabitants of *B.* within certain limits, were declared to be a corporation, by the name of the trustees of the village of *B.* with various powers, to make by-laws, ordinances, &c. The west boundary of the village, being the section of the town of *B.* called the " Fire District," was the *East River.* The plaintiffs passed an ordinance, declaring that if any person, not holding the appointment of weighmaster, or measurer, under the trustees, &c. should exercise the office, &c. he should forfeit and pay twenty-five dollars, &c. It was proved that the defendant acted as a public measurer on the 14th of *April,* 1819, in a store, standing on a large dock or wharf, erected twenty-five or thirty years ago, the west

*Kings county, of which the village of Brooklyn is part, includes all the wharves, docks, and other artificial erections, on the East River, opposite to the city of New-York, though west of the natural low-water mark on the Nassau or Long-Island shore ; and the jurisdiction of that village extends to the actual line of low-water, whether formed by natural or artificial means.*
*Vide the next case.*

end of which extended between ten and twenty feet west of low water mark, being made land. It did not appear that the city of *New-York* had ever exercised jurisdiction in the place where the defendant acted as a measurer. The property had ·been always assessed and paid taxes to *Brooklyn.* There were many other houses and stores erected on made ground, west of the ancient low water-mark, which had paid taxes to *B.*

The defendant was admitted to be a licensed measurer in the city of *New-York ;* and to show that the place where he acted as measurer was within the boundary of the city of *New-York,* he gave in evidence the charter of that city, by which is granted to *New-York* all the vacant and unappropriated ground lying on *Nassau* (or *Long*) *Island,* from high-water to low-water mark, contiguous and fronting to the city, from *The Wallabout* to the west side of the *Red-hook* and the *Old Ferry,* on both sides of the *East River ;* and the *eastern* boundary of the city is described as extending across the *East River* or *Sound* to *Nassau Island,* to low-water mark there, (including certain islands,) and from thence all along *Nassau Island* shore, at low-water mark, unto the south side of the *Redhook.* The defendant also produced and read the " act to divide this state into counties," (sess. 36. ch. 39.) by which the limits of the county of *New-York* are described as beginning at *Spyten Duyvel Creek,* where the same empties itself into the *Hudson River* on the *Westchester* side thereof, at low water, wherever the same now is, or hereafter may be, and so running along the said creek, at low water mark, as aforesaid, on the *Westchester* side thereof, unto the *East River* or *Sound,* and from thence to cross over to *Nassau Island,* to low water mark there, as aforesaid, (including certain islands,) and from thence along *Nassau Island* shore, at low water mark as aforesaid, unto the south side of *Redhook,*" &c. And the county of *Kings* is bounded *northerly* by the county of *New-York,* &c.

The justice gave judgment for the plaintiffs below.

*Goodenow,* for the plaintiff in error, contended that, according to the charter of the city of *New-York,* and the

laws of the state, the limits of the city of *New-York* extended, on the east side, to *low water mark* on *Nassau Island,* or the *Brooklyn* shore, and included the place in which the plaintiff in error exercised the office of measurer ; and that he was, therefore, within the jurisdiction of the city. The erection of a wharf or dock in the river, beyond low water mark, was clearly not a case of *alluvion,* which might draw after it the jurisdiction to *Brooklyn.*

*Wells,* contra, said, that the claim of jurisdiction now set up would extend to low water mark on the shore of *Long Island,* so as to include the whole line of wharves, docks, houses, and stores, in *Brooklyn,* which extend into the river, beyond the natural low water mark. But the language of the act defining the limits of the county of *New York,* showed that it was intended to give the jurisdiction of the *water* merely to *New-York,* that is, to low water mark, as it then was, or might be thereafter : not a fixed line, but as it might be varied, from time to time, by natural causes, or artificial means, changing with the flux and reflux of the tide. It was not meant to include alluvion, nor ground made by wharves and docks.

Again ; this wharf had existed above twenty-five years, and long before the act of 1813. The property in the ground on which it was built was no doubt derived from the Corporation of *New-York ;* but that was merely a question of jurisdiction, which, he contended, must vary with the change of low water mark, whether produced by natural or artificial means.

The evidence of user on the part of *Brooklyn,* and of non-user on the part of *New York,* is strongly against the latter. The *practical* line is to be taken, in fixing the limits of jurisdiction, in contradistinction to an imaginary or air line. (*Ely* v. *Parsons,* 2 *Day's Conn. Rep.* 332.) The act incorporating the village of *Brooklyn,* and the erecting the fire district, shows that this place was considered as within *Brooklyn,* and it has always been taxed there, but never by *New-York.* The rights of wharfage have also been uniformly exercised in the former place, but never in the latter. The Trustees of *Brooklyn* have power to appoint

measurers, &c. and it is on these wharves, or in these stores, that they generally exercise their functions. Besides, the *ordinances* of the Corporation of *New-York* reach to the wharves and docks of *Brooklyn.*

*Edwards*, in reply, observed, that this was not a question as to the limits of the *county* of *New-York*, according to the act of the legislature, but as to the boundary and jurisdiction of the *city*, under its *charter.* This boundary extends on the east, to " *low water mark*" on *Long Island.* The limits or boundaries of *Brooklyn* are nowhere distinctly defined ; though a special jurisdiction, called the " fireward," was erected within certain limits, for the purposes of police or prudential regulation. Low-water mark is a certain boundary, which, though it may be gradually changed by the operation of nature, cannot be varied by the acts of individuals.

*Per Curiam.* This was an action for a penalty, for violating the by-law of the village of *Brooklyn*, in assuming to exercise the office of measurer of grain, without a license from the trustees. The defence was, that the act complained of was done in a store, on a wharf or dock, *west* of the natural low-water mark of the *East River*, on the *Nassau*, or *Long-Island* shore, and not within the limits of *Brooklyn.* We are of opinion that *Kings County* includes all the wharves and made land on the *Long Island* shore of the *East River*, as well as natural *alluvion*, to the actual line of low water. The judgment of the Court below must, therefore, be affirmed.

Judgment affirmed.