THE PEOPLE OF THE STATE OF NEW YORK EX REL. THE MAYOR, ETC., OF THE CITY OF NEW YORK, RESPONDENT, *v.* THE BOARD OF ASSESSORS OF THE CITY OF BROOKLYN, AND THE BOARD OF SUPERVISORS OF THE COUNTY OF KINGS, APPELLANTS.

*Taxation—property held by a municipal corporation for the purposes of government, viz., land used for a ferry landing, is exempt.*

The Fulton ferry landing place, in Brooklyn, which was acquired by the city of New York for ferry-purposes in colonial times, and has ever since been owned by it and used for that purpose, and is now leased to the Union Ferry Company for a landing place, is held by the city of New York for public and governmental purposes and is exempt from taxation. (BARNARD, P. J., dissenting.)

384   PEOPLE ex rel. MAYOR *v.* BD. OF ASSESSORS.

SECOND DEPARTMENT, FEBRUARY TERM, 1888.

*City of Rochester* v. *Town of Rush* (80 N.Y., 302); *East Hartford* v. *Hartford Bridge Company* (10 How. [U. S.], 511); *Darlington* v. *The Mayor* (31 N. Y., 164) followed; *Louisville* v. *The Commonwealth* (1 Duvall, 295) not followed.

APPEAL from an order, made at the Kings county Special Term, vacating an assessment.

The proceeding was taken by *certiorari* to review the determination of the board of assessors of Brooklyn, in assessing certain lands in Brooklyn belonging to the city of New York. The lands in question are leased to and used and occupied by the Union Ferry Company of Brooklyn. Under the terms of this lease, the Union Ferry Company pays an annual rental to the city of New York, and conducts a ferry plying between the two cities.

*Almet F. Jenks*, for the appellants.

*Morgan J. O'Brien*, for the respondent.

DYKMAN, J.:

By an implication which has received the sanction of elementary writers and judicial decisions, the property of municipal corporations held for governmental purposes is exempted from the operation of the revenue laws for the imposition and collection of taxes. Recognizing the maturity and potency of such implication, and its sufficiency to relieve the public property from the burden of taxation if allowed its full scope and operation, the learned counsel for the appellants endeavors to obviate its force and avoid its application to this case by drawing a line of demarcation between public property held by the city for public uses, or for purposes of government, and such as is held for social or commercial purposes, and placing this property in question in the latter class. This argument will fall under review in the progress of our examination; and it will be important to ascertain whether any such distinction is recognized in this State or has any appropriate application to this case.

The city of New York presented a petition to the Supreme Court, alleging, among other things, that it held certain lands in the city of Brooklyn for public and municipal uses and purposes, but that, nevertheless, the latter city had unlawfully assessed it for purposes of taxation. The property so referred to was land, and

PEOPLE ex rel. MAYOR *v.* BD. OF ASSESSORS. 385

Second Department, February Term, 1888.

constituted the landing place for the Fulton ferry on the Brooklyn side. A writ of *certiorari* was thereupon issued, and the defendants made return thereto, that the land was not held by the plaintiff for public and municipal uses and purposes, but for its private benefit and emolument. The issue thus made was tried at the Special Term and decided in favor of the relator, and an order was entered declaring the tax unlawful and void, and that the lands were exempt from taxation, and the defendants now appeal from that order. The facts were agreed upon, and in effect are, that the land in question was acquired for ferry purposes in colonial times, and ever since has been in use therefor, and now is leased to the Union Ferry Company for a landing place.

The question of law thus presented is whether the Fulton ferry landing place, in Brooklyn, is held by the city of New York in such a capacity or for such purposes as to render it subject to taxation. This form of the question casts the burden of the argument upon the appellants, where it properly should rest. Inasmuch as the implication has now ripened into a rule, that property held by a public or municipal corporation is held for purposes of government and is exempt from taxation. (Dillon on Municipal Corporations [3d ed.], § 773 [614].) As, therefore, the appellants rested their case on the exception to the rule, they were bound to establish such exception and place within it the lands in question; and we must now see if they have demonstrated their proposition, or whether this ferry landing is held for a public and governmental purpose and so exempt from taxation. The leading case on this subject is the *City of Rochester* v. *Town of Rush* (80 N. Y., 302), which arose over an attempt, on the part of the town, to tax the water-works of the city. It was held they were exempt because the system of water-works was imposed upon the city by legislative enactment, which could only be valid because its object was public as concerning the health of the public and the safety of their property, and also because it was a product of taxation and stood in the place thereof, and the works could not be taken or diminished thereby. It was pointed out that a power to tax involves the power to sell for a default in payment, and thus defeat the interest of the government, and in this connection Judge Danforth said that " in the absence of an

386    PEOPLE ex rel. MAYOR v. BD. OF ASSESSORS.

Second Department, February Term, 1888.

expressed declaration to that effect, we cannot suppose that the legislature intended that the works thus imposed upon the city should be subjected to taxation in the towns and villages through or in which the work was to be constructed." That case seems to control the case at bar. The ferry franchises held by the city of New York was imposed on that city in the same sense that the water-works system was imposed upon the city of Rochester. The latter city became bound to furnish water, while the former owed a duty to furnish ferry facilities.

In the *Mayor, etc., of New York* v. *Starin* (106 N. Y., 19) Judge EARL in delivering the opinion of the court said: " That a ferry franchise imposed upon the grantee the obligation to maintain a ferry with suitable accommodations for the convenience of the public." The Rochester case and that at bar, have another element in common, for it is easily demonstrable that a ferry is a public and governmental object.

In this Starin case the ferry is thus defined: " In the consideration of this case it is important to determine what a ferry is. In a general sense it is a highway over narrow waters. * * * A ferry is a continuation of the highway from one side of the water over which it passes to the other. * * * No one has the right to set up a public ferry and charge tolls for the transportation of persons and property, without the license of the sovereign. And at common law it is believed that one so doing was guilty of a crime, and he could be proceeded against by writ of *quo warranto;* and so by our Penal Code it is enacted that ' a person who maintains a ferry for profit and hire, upon any waters within this State without authority of law, is punishable by a fine,' " etc. The case in the United States Supreme Court will further illustrate the nature of a ferry, and at the same time answer the appellants argument, that a ferry is private property, because it is within the protection of the clause of the Federal Constitution forbidding the passage by the States of any laws impairing the obligation of contracts.

The town of East Hartford held a ferry franchise from the State, and had boats and landings in full operation. The legislature, to induce a private company to rebuild its bridge, which had been destroyed by fire, resumed its grant of the franchise and discontinued the ferry. The town appealed to the courts, claiming that the

PEOPLE ex rel. MAYOR v. BD. OF ASSESSORS.    387

Second Department, February Term, 1888.

grant of the ferry franchise was a contract within the Constitution of the United States, and that the questioned legislation impaired its obligation, but the law was held valid, and in the course of the opinion the following doctrine was enunciated : " The parties to this grant did not by their charter stand in the attitude toward each other of making a contract by it such as is contemplated in the Constitution and so could not be modified by subsequent legislation.   The legislature was acting here on the one part, and public municipal and political corporations on the other.    They were acting, too, in relation to a public object, being virtually a highway across the river over another highway up and down the river.   From this standing and relation of these parties, and from the subject-matter of their action, we think that the doing of the legislature as to this ferry must be considered rather as public laws. than as contracts.    They related to public interests.    They changed as those interests demanded.    The grantees likewise, the towns being mere organizations for public purposes, were liable to have their public powers, rights and duties modified or abolished at any moment by the legislature."   (*East Hartford* v. *Hartford Bridge Company*, 10 How· [U. S.], at pp. 533, 534.)

It is true the ferry-house is not the product of taxation, for it is coeval with the taxing power.   A true test would be whether the establishment of a ferry, and the purchase of this land would be a proper subject for taxation or municipal indebtedness.    The constitutional test would be whether it was a city purpose within section 11 of article 8 of the Constitution.

In the case of *The People ex rel. Murphy* v. *Kelly* (70 N. Y., 475), it was held that a highway over waters separating two cities would be a city purpose of either. and its credit might be used therefor.

The last of the large number of reasons given for the Rochester decision is presented here ; for a sale of this landing place for unpaid taxes would as utterly defeat the interest of the government in imposing or granting the ferry franchise as would a sale of the Rochester water-works.   The case now under consideration, therefore, seems to fall easily and directly within the decision of the Rochester case.

The argument of the learned counsel for the appellants is, that this

**388** PEOPLE ex rel. MAYOR v. BD. OF ASSESSORS.

SECOND DEPARTMENT, FEBRUARY TERM, 1888.

landing is employed by the city in its social or commercial capacity, and for its own profits; and he relies on Judge COOLEY's treatise, and the case in Kentucky, growing out of the taxation of Louisville by the Commonwealth. In the treatise on the Law of Taxation (pp. 173, 174, 2d ed.), Judge COOLEY, after stating that, by implication, all municipal property is exempted from taxation, proceeds as follows: " But a municipal corporation may hold property, not for governmental purposes, but for the mere convenience of its people, or to supply some need which is commonly supplied by a private corporation; such as water or gas-works; and the presumption of an intention to exclude such property from taxation would be very slight, perhaps, could not arise at all on the language of the law. Such property is deemed to held by the corporation, as is expressed in one case, in its social or commercial capacity, as a private corporation, and for its own profit; and, therefore, it was held that vacant lots owned by a city, market-houses, fire engines, etc., were not presumptively excluded from taxation; but this, unless restricted to the case of special assessments, would seem to be limiting the implied exemption unreasonably, and certainly more than other cases limit it. The case referred to by this writer is *City of Louisville* v. *The Commonwealth* (1 Duvall, 295). The various articles of property owned by the city of Louisville were assessed by the State of Kentucky at an aggregate valuation of $664,000. The city moved the county judge to correct the assessment by exempting the property as municipal or by reducing the valuation. The court exempted the City Hall only and made a small reduction otherwise, and the city appealed.

The court on appeal reversed the judgment and remanded the case to the county judge and laid down these rules for his guidance: *First.* " The public property of Louisville used for carrying on its municipal government," is exempt. *Second.* " Whatever property, such as court-house, prison and the like, which became necessary or useful to the administration of the municipal government and is devoted to that use, is exempt from State taxation." *Third.* " But whatever is not so used, but is owned and used by Louisville in its social or commercial capacity as a private corporation and for its own profit, such as vacant lots, market houses, fire engines and the like, is subject to taxation."

PEOPLE ex rel. MAYOR v. BD. OF ASSESSORS.    389

SECOND DEPARTMENT, FEBRUARY TERM, 1888.

The idea of revenue was considered of controlling importance in that case, for the opinion contains these words : " The true principle of taxation is equality of contribution according to means, and charity is no part of the means of the donor or of the mere custodian of the barren title; it is of no pecuniary profit or appreciable value to the nominal owner, it is not, therefore, a fit subject of taxation. Consequently, although the legislature has the power to tax it, yet no statute for taxing the property of all persons, will be interpreted as embracing property dedicated to public use or merely benevolence."

Another quotation will show how that court classified different items : " Much the larger portion of the property as assesssd, including wharves, engine houses and other articles not used or needed for governmental purposes, are not entitled to exoneration."

Judge COOLEY and the decision in this Kentucky case are both opposed to the law of this State; both would subject water-works to taxation, while the Rochester case has definitely settled the law in favor of exemption. The Louisville case holds that fire engines and houses are held in a social or commercial capacity, while in *Smith* v. *The City of Rochester* (76 N. Y., 506), our Court of Appeals held they were public and governmental. The word governmental is a term of very broad signification, and good government may to-day leave the service of water to a locality open to competition among individuals whose property will be taxed, and in the future erect it into a governmental monopoly, free from taxation and in the charge of the municipality.

The service of water to the inhabitants of a locality is brought within the domain of government when a public service would be the best service, and the judge of this is the legislature, and the fact that it has given over such service to a municipality as a monopoly, is proof of a high order that it has in that locality become a governmental purpose.

Moreover, property owned by a municipal corporation is held in trust for the inhabitants and is altogether public in its character. (*Darlington* v. *Mayor*, 31 N. Y., 164.)

In this latter case Judge DENIO has shown with his usual perspicuity, that the decision of the Supreme Court in the case of *Bailey* v. *Mayor* (3 Hill, 531), settled no principle of law, and was sub-

**390** PEOPLE ex rel. MAYOR *v.* BD. OF ASSESSORS.

Second Department, February Term, 1888.

stantially repudiated by the court of errors when the case was subsequently carried to that court. (2 Denio, 433.)

With the repudiation of that case, and some others which were criticised in the same opinion, the doctrine contended for by the appellants loses its place in the jurisprudence of this State, and there is no reason for its restoration.

The powers of a municipal corporation are divided between such as are governmental and public, and proprietary and private; and it is believed that a failure to discriminate between these two kinds of powers and the manner and purposes of their exercises, has sometimes led to confusion and misapplication of terms, because property held and controlled by a city in its proprietary capacity, and used solely to promote the mere convenience of the public, may with propriety be said to be held for public purposes; and the fact that such property is controlled by the city in its proprietary capacity, by no means renders such property private in its character.

The profit which the ferry brings to the city of New York does not subject it to taxation, for the city of Rochester was authorized and did charge for water, and yet its water-works were held exempt. Moreover the corporation of New York city has no control over the ferry revenue. It is devoted to the sinking fund by a law which the city cannot modify or repeal It would be entirely competent for the State to operate a ferry and take toll, and if it did it would be conceded to be a governmental and public work. It can make no difference that this function of government has been delegated to the municipal authority. If a profit arising out of a public work subjected it to taxation, the bridge between these two cities would be taxed, for it produces a revenue to each, and revenue is synonymous with profit. The Union Ferry Company and its profit has no more relation to the question under consideration, than would a single ferryman rowing a scow with a few passengers for a share of the tolls under an agreement with the city. The ferry company is doubtless taxed for all its property. Within the decision in *Darlington's case (supra)*, the land in question is public property devoted to a public use and is not therefore subject to taxation. If immunity be accorded to any property owned by a municipality for public purposes this landing place must be set down in that list.

The appellants have failed to show the prevalence of any exception in this State to the general rule or implication which exempts the property of a municipal corporation from taxation, and the order appealed from should be affirmed with costs.

PRATT, J., concurred.

BARNARD, P. J., dissenting:

No question is made as to the ownership of the land assessed, nor as to its being taxable in the city of Brooklyn, if taxable in any place. The city of New York owns to low-water mark on the Long Island shore, and the land is at the water's edge, but it has been held by the Court of Appeals that whether this land was originally below low-water mark or not, it would be taxable in Brooklyn, for the reason that the low-water mark was the mark of low water upon the lands as continued into the East river by filling in or by permanent structures annexed to the main land. *Luke* v. *City of Brooklyn* (43 Barb., 54), affirmed in the Court of Appeals, but no opinion written. See, however, *Atlantic Dock Company* v. *City of Brooklyn* (1 Abb. Ct. of App. Dec., 24); *Orr* v. *City of Brooklyn* (36 N. Y., 661). This land is not exempt by statute in express terms. (2 R. S. [7th ed.], 982, § 4, chap. 293, Laws of 1881.) The assessors, therefore, are right in putting the land on the tax list unless an exemption is shown by the following facts. The property is the Brooklyn terminus of the Fulton street ferry. The ferry is very old and has always been the property of the city of New York. It had been carried on by the city for seventy years before 1707. In 1708 the English government granted a strip of land between high and low-water mark to prevent competition, when the strip was unoccupied at the time of the grant. Since that time the city of New York has had the exclusive right to run ferries to and from the opposite lands of Long Island, Richmond county and New Jersey. These ferries are leased out to individuals or corporations, in the present case the Union Ferry Company. The claim is that the land in the various termina of these ferries outside of the city of New York is held for public use and on that account not taxable. That is the question presented on this appeal. Municipal governments are usually local, but modern necessities have made exceptions to the rule.

One striking one exists both in Brooklyn and New York. Each of these cities, by public works constructed by taxation, obtain pure water from points outside the city for the use of its inhabitants. The Court of Appeals has decided that property purchased by a municipality for a reservoir outside of its limits, for a system of water-works, was not taxable in the town in which the reservoir was situated. (*City of Rochester* v. *Town of Rush*, 80 N. Y., 302.) The direct object of the water-works was for the purpose of promoting the health and safety of the people, and the legislature imposed the duty of constructing and maintaining the system upon the city of Rochester and to pay the cost out of taxes to be imposed. This was a legal public use and so determined by the legislature, and the property was decided by the Court of Appeals to be the result of taxation and could not be taken or diminished by taxation. In the present case it does not appear how the property was acquired, wholly by grant from the English crown or by private purchase, or by filling in land adjacent to up-land which is most probable. The power of the legislature to fix a public use is sufficient to authorize the taking of lands for a ferry right. Such a power was upheld in respect to railroads. *Buffalo, etc., Railroad Company* v. *Brainard* (9 N. Y., 100) and ferries would easily fall within the same principle. There is no legislation in respect to this ferry right except that the legislature has approved of the application of the ferry requirements to the sinking fund of the city of New York. (Chap. 410, Laws of 1882.) This approval fell short of making the running of the ferry a duty imposed by law upon the city of New York. It is consistent with a private ownership of the ferry and not sufficient to create at all hazards a municipal duty to keep it running as a means of government. Unless the land be an agency or means of city government, it is taxable. (*The People ex rel. Mills Water-works Co.* v. *Forrest*, 97 N. Y., 97.) In that case the legislature had authorized private corporations to erect water-works to supply villages and had authorized condemnation of land as for a public use, and had authorized villages to contract for the water and raise money by tax to perform the contract; yet it was held not to be a governmental agency and therefore taxable. The city of New York leases its ferry right to a company which agrees to conduct and maintain a ferry, and is to receive the fee for ferriage.

This case differs, it seems to me, from the *City of Rochester* v. *The Town of Rush.*

There is no legislative declaration authorizing the condemnation of lands, and there is no such legislative appropriation of the incomes as necessarily to exclude the idea that the land can be taxable. The funds are all appropriated and no requirement is made to collect the tax by another tax. This fact is prominent in the city of Rochester as well as the case of *Rex* v. *Liverpool* (7 B. & C., 61). In this case the proceeds were all appropriated by law for the improvement of the docks out of which the dock rates came. This was not a beneficial occupation. The ferry right is a privilege granted and not a duty imposed. The city takes the rent and indeed applies it to the payment of its debts, but it could have applied it on any obligation incurred for the municipal government. The legislature approved of the application, but this approval did not impliedly destroy the proprietary right of the city of New York to maintain the ferry. By this very act of 1882 the legislature prohibited any other person or corporation than the city of New York from keeping the ferry between New York and Long Island, under a heavy penalty for every offense. (Chap. 410, Laws of 1882, § 1966.)

The case is not similar to the suspension bridge over the East river. That is built by taxation; land is condemned for it as for a public use and it is put under the control of the cities of New York and Brooklyn, and its revenues all appropriated directly by the legislature, thus excluding all possible inference that it is taxable in either city, and still further it is declared a public highway subject to toll. The land in the present case is of large value without regard to the structures on it for ferry purposes. The city of New York has other ferry rights along the water front of Long Island, and presumably other landing places, which would all be exempt. Under the rule of exemption claimed by respondent, lands could not be purchased and made free of taxation if used in connection with the ferry rights of the city of New York. The same question will arise in *Richmond* v. *Queens County.* The subject is so important that I deem it safest to follow the statute until the Court of Appeals can pass upon the question.

The order should be reversed, with costs and proceedings affirmed.

Judgment affirmed, without costs.