William M. Tebo, Appellant, *v.* The City of Brooklyn, Respondent.

The provision of the Revised Statutes (1 R. S. 390, § 4), which directs that when the line between two towns, wards or counties divides a farm or lot the same shall be taxed, if occupied, in the town, ward or county where the occupant resides, applies as well to lots in cities divided by lines between wards and counties, as to farm lands.

Plaintiff is the owner of land, a part of which lies above and part below low-water mark of Gowanus bay, which land is laid out as a city block in the city of Brooklyn; he constructed a pier from the upland extending to the outer line of his lot and used and occupied it with the upland. The whole lot was assessed and taxed by the city assessors, and, upon plaintiff's refusal to pay, the lot was advertised for sale. In an action to restrain the sale on the ground that the portions of the block below high-water mark were not within the city of Brooklyn, *held*, that, conceding this to be so, and that part of the lot was within that city and part within the city of New York, the assessment was legal; and so, the action was not maintainable.

(Argued June 2, 1892; decided October 1, 1892.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 18, 1890, which reversed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term, refused a new trial and ordered final judgment in favor of defendant.

This was an action to restrain the sale of plaintiff's property in the city of Brooklyn for the taxes of 1886, and to compel the cancellation of the tax of record.

The facts, so far as material, are stated in the opinion.

*Josiah T. Marean* for appellant.

*Richard B. Green* for respondent.

Follett, Ch. J. Twenty-third and Twenty-fourth streets, in the city of Brooklyn, are 200 feet apart, parallel with each other, and extend southeasterly from the shore of Gowanus

bay, which bay is bounded on the north and east by said city. Second avenue crosses these streets at right angles, and about 300 feet southeasterly of low-water mark on the shore of that bay. First avenue is laid out through that part of the city that bounds the bay on the north, extending actually to the north shore, but it is laid out by imaginary lines over the shoal waters of the bay to and across Twenty-third and Twenty-fourth streets. The space bounded on the north by the south line of Twenty-third street, on the east by Second avenue, on the south by the north line of 24th street, and on the west by the east line of 1st avenue prolonged from the north shore across these streets, forms a block or lot about 700 feet long between the avenues, and 200 feet wide between the streets. About 300 feet of the easterly end of this lot is above low-water mark, but the remainder about 400 feet by 200 feet is below low-water mark. The land below the low-water mark was at sometime, the date not appearing, acquired by the plaintiff from the State of New York, but from whom, or when he acquired the land above the low-water mark does not appear, nor is it material, for it is conceded that in 1866 plaintiff owned the entire block or lot.

In 1865, plaintiff constructed a pier midway between 23d and 24th streets, 30 feet wide and extending northwesterly to the east line of 1st avenue, if prolonged from the north shore to 24th street. It is 85 feet from the north side of this pier to the north line of the plaintiff's lot, and it is the same distance from the south side of the pier to the south boundary of this lot. This lot of land bounded by these streets and avenues, partly below and partly above low-water mark, as above described was in 1886 known on the assessment map of the 8th ward of the city of Brooklyn, as block 33. In that year the board of assessors of that city valued this block or lot at $15,000, and levied a tax thereon of $409.54, which the plaintiff refused to pay and the defendant advertised that it would sell the block on the 6th of June, 1888, for the non-payment of taxes. In May of that year this action was begun to restrain the sale on the ground that the portions of this

block below low-water mark, on the north and south sides of the pier, were not within the city of Brooklyn. The plaintiff concedes that the part of the block above low-water mark and the pier are within the city, and subject to assessment therein. Whether lands and piers beyond the natural low-water mark of the shores of the city of Brooklyn are within or without the boundaries of the city has been considered in several cases. *Udall* v. *Brooklyn* (19 John. 175), was an action to recover a penalty for measuring grain for hire within the then village of Brooklyn, in violation of the ordinances. It was conceded that defendant was a licensed measurer in the city of New York. A pier had been constructed from the shore of Long Island westward beyond low-water mark, on the end of which the measuring was done. The defense was that the act complained of was committed beyond the limits of Kings county, which was bounded by low-water mark. The court said, in deciding the case: "We are of the opinion that Kings county includes all the wharves and made land on the Long Island shore of the East river, as well as natural alluvion to the actual line of low water." *Luke* v. *Brooklyn* (43 Barb. 54) was an action to recover the value of a building destroyed during the draft riots of July, 1863. The property was on the end of a pier beyond low-water mark. The court held that: "The jurisdiction of the city of Brooklyn must, from necessity, follow the shore as it advances into the river or bay, whether the accretion proceeds from alluvion or artificial deposits and erections." This case was affirmed by the Court of Appeals in June, 1865. *Atlantic Dock Company* v. *Brooklyn* (1 Abb. Ct. App. Decis. 24; *S. C.*, 3 Keyes, 445; 3 Trans. App. 305) was an action to recover damages for the destruction of a pier and a dredging machine floating in a basin formed in part by the pier. The pier extended below low-water mark and the machine was floating near the end of the pier. It was held: "It has been repeatedly adjudged that the boundary of territorial jurisdiction between the counties of New York and Kings is the actual line of low water on the Brooklyn side, whether corresponding with the

original low-water line on the East river shore, or varied by the permanent encroachment of docks, piers and wharves, or other artificial erections for the purposes of general commerce." The same rule was held in *Orr* v. *Brooklyn* (36 N. Y. 661). Under these decisions it cannot be doubted that the pier was within the jurisdiction of the defendant's assessors. Since the cases cited were decided the boundaries of the city of Brooklyn have been somewhat changed, and it is asserted that they now extend below the low-water mark. This question we do not consider it necessary to determine upon this appeal.

May 11, 1886, article 1 of title 2 of chapter 13 of part 1 of the Revised Statutes was amended by adding thereto section 4, which then read as follows:

" § 4. When the line between two towns, wards or counties divides a farm or lot, the same shall be taxed, if occupied, in the town, ward or county where the occupant resides ; if unoccupied, each part shall be assessed in the town, ward, village or county where· the same shall lie."

This section laid down a rule for the assessment of lots in cities divided by the lines between wards or counties as well as for farms divided by the boundary lines of towns. Assuming this lot was, as the plaintiff contends, partly within the city of Brooklyn, and partly within the city of New York, the case falls within the statute, and the assessment was legal, and the judgment should be affirmed with costs.

All concur.

Judgment affirmed.